# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2014AP2633-D |
| COMPLETE TITLE: | In the Matter of Disciplinary Proceedings Against William J. Spangler, Attorney at Law: |
| | |
| | Office of Lawyer Regulation, |
| |        Complainant, |
| |    v. |
| | William J. Spangler, |
| |        Respondent. |

DISCIPLINARY PROCEEDINGS AGAINST SPANGLER

| | |
|---|---|
| OPINION FILED: | July 8, 2016 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | |
|   COUNTY: | |
|   JUDGE: | |

| | |
|---|---|
| JUSTICES: | |
|   CONCURRED: | |
|   DISSENTED: | |
|   NOT PARTICIPATING: | |

| | |
|---|---|
| ATTORNEYS: | |

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2014AP2633-D

STATE OF WISCONSIN : IN SUPREME COURT

**In the Matter of Disciplinary Proceedings Against William J. Spangler, Attorney at Law:**

**Office of Lawyer Regulation,**

      Complainant,

  v.

**William J. Spangler,**

      Respondent.

**FILED**

**JUL 8, 2016**

Diane M. Fremgen
Clerk of Supreme Court

---

ATTORNEY disciplinary proceeding. *Attorney's license suspended.*

¶1 PER CURIAM. We review a report and supplemental report filed by referee James R. Erickson recommending that Attorney William J. Spangler's license to practice law in Wisconsin be suspended for 60 days for seven counts of professional misconduct involving two client matters. The referee also recommends that Attorney Spangler pay the full

costs of the proceeding, which are $6,678.43 as of March 29, 2016.

¶2 Upon careful review of the matter, we adopt the referee's findings of fact and conclusions of law. We conclude, however, that rather than the 60-day suspension stipulated by the parties and recommended by the referee, a six-month suspension of Attorney Spangler's license to practice law in Wisconsin is the appropriate sanction for his misconduct. We also agree with the referee that the full costs of the proceeding should be assessed against Attorney Spangler.

¶3 Attorney Spangler was admitted to practice law in Wisconsin in 2003 and practices in Eau Claire. He has no prior disciplinary history.

¶4 On November 13, 2014, the Office of Lawyer Regulation (OLR) filed a complaint against Attorney Spangler alleging four counts of misconduct arising out of Attorney Spangler's representation of F.M. The complaint averred that in June 2007, Attorney Spangler filed a lawsuit on behalf of F.M. in Eau Claire County circuit court. Attorney Spangler was not able to obtain service of an authenticated copy of the summons and complaint on the defendant, and the case was dismissed. Attorney Spangler refiled the complaint in August 2008. This time the defendant was served. The lawsuit alleged that F.M. and the defendant had an oral partnership to purchase real estate and that F.M. had provided funds to purchase and build a condominium fourplex. F.M. sought an accounting and/or dissolution of the partnership. The parties agreed to the

2

termination of the partnership relationship but not to the specific terms of dissolution. The lawsuit continued for the purpose of obtaining a court determination as to the respective rights and property ownership of the parties.

¶5 The circuit court allowed the parties a significant amount of time to discuss settlement of the matter. In late 2009 a scheduling order was issued setting the matter for a one-day trial to the court on April 20, 2010. In correspondence to the Eau Claire County clerk of circuit court dated April 12, 2010, Attorney Spangler stated that the parties had reached a settlement and that F.M. desired to dismiss the lawsuit. Attorney Spangler copied opposing counsel on this letter but did not copy F.M. The court signed an order dismissing the matter without prejudice to either party on April 14, 2010, and the order was filed the following day.

¶6 Attorney Spangler had not consulted with F.M. or obtained F.M.'s approval prior to proposing and agreeing to the dismissal of the lawsuit, nor did he inform his client that the suit had been dismissed. Instead, Attorney Spangler made a series of misrepresentations and created a series of false documents to mislead his client as to the status of the lawsuit and its outcome.

¶7 In November 2010, despite knowing that the suit had been dismissed, Attorney Spangler spoke to F.M. by telephone and represented to him that a judgment had been obtained in F.M.'s favor but that collecting on the judgment would be difficult given the state of the real estate market at the time and the

3

defendant's financial situation. To support his claim to F.M. that a judgment had been obtained, Attorney Spangler created fake findings of fact, conclusions of law, and an order in the matter dated October 14, 2009. While Attorney Spangler did not forge the judge's signature on the document, he entered "/s/" on the signature line above the judge's name. Attorney Spangler did not provide this document to anyone but F.M. Attorney Spangler also created a fake judgment in the case, stating that F.M. "shall be repaid his initial investment in an amount of $102,000" and F.M. "does have an [sic] recover of defendant taxable costs and disbursement in the amount of $84,243." Again, Attorney Spangler did not forge the judge's actual signature on the fake judgment, but on the signature line above the judge's name entered "/s/." Again, Attorney Spangler did not provide this document to anyone but F.M.

¶8 F.M. subsequently asked Attorney Spangler to pursue the defendant's insurance company for payment. Attorney Spangler prepared a demand letter addressed to the insurance company, dated June 17, 2011. The letter referred to previous correspondence from Attorney Spangler to the insurance company and stated a demand for $200,000. The letter stated that in the absence of payment of the demand amount within ten days, Attorney Spangler would proceed with legal action against the insurance company. While the letter indicated it was being copied to F.M., the Wisconsin commissioner of insurance, and counsel for the defendant, Attorney Spangler did not provide a copy of the letter to anyone but F.M.

4

¶9 On August 1, 2011, Attorney Spangler prepared and signed a letter facially addressed to the Eau Claire County clerk of court purportedly enclosing an original and four copies of a complaint against the insurance company. Attorney Spangler also prepared and signed with a date of July 29, 2011, a civil complaint against the insurance company. The complaint that Attorney Spangler drafted and provided to F.M. in the purported action against the insurance company also showed a fabricated file stamp indicating that the civil complaint was filed in Eau Claire County circuit court on August 9, 2011. Attorney Spangler did not provide these documents to anyone but F.M. He never filed the cover letter or the civil complaint in circuit court but instead used those documents to mislead F.M. as to the status of the representation and the steps taken on the client's behalf.

¶10 On May 6, 2010, Attorney Spangler created a fake order suspending license purporting to suspend a real estate license held by the defendant. The fake order was purportedly issued by the chair of the Wisconsin Realty Board. Attorney Spangler did not forge an actual signature on the fake suspension order that he created, but on the signature line above the chair's name, Attorney Spangler typed "/William H. Hendricks/." There was no proceeding resulting in an order of suspension against the defendant, and "Wisconsin Realty Board" is not the name of any Wisconsin regulatory entity.

¶11 Prior to December 2011, while Attorney Spangler was still trying to perpetuate the fraud of having obtained a

5

judgment and pursued collection, he provided F.M. with at least $45,000 of his own money as funds purportedly obtained toward partial satisfaction of the fake judgment.

¶12 F.M. eventually consulted with other counsel and in December of 2011, Attorney Spangler's lies and fabrications came to light. In late December 2011, the defendant's counsel was contacted by F.M.'s new attorneys and was provided with copies of at least some of the fake documents created by Attorney Spangler. On or about December 30, 2011, the defendant's counsel contacted and then met with Attorney Spangler, who admitted he had drafted a series of false documents relating to the case. Attorney Spangler and counsel for the defendant each then promptly notified the court in writing of the fabricated documents that Attorney Spangler had produced.

¶13 F.M.'s civil claims against Attorney Spangler were resolved pursuant to a January 2012 settlement agreement and release, whereby Attorney Spangler agreed to execute a promissory note and pay F.M. the sum of $125,000. Attorney Spangler satisfied the promissory note in December 2012.

¶14 The OLR's complaint alleged the following counts of misconduct with respect to Attorney Spangler's representation of F.M.:

> [Count 1] By agreeing to the dismissal of [F.M.'s Eau Claire County lawsuit], without having consulted with his client, [F.M.], or having his client's consent to

6

the stipulated dismissal of the lawsuit, [Attorney] Spangler violated SCR 20:1.2(a).[1]

[Count 2] By agreeing to the dismissal of [F.M.'s Eau Claire County lawsuit], without having consulted with his client, [F.M.], or having obtained his client's consent to the stipulated dismissal of the lawsuit, [Attorney] Spangler violated SCR 20:1.4(a)(1) and (2).[2] [Count 3] By failing to provide [F.M.] with accurate information as to case status and his efforts taken on [F.M.'s] behalf, [Attorney] Spangler violated SCR 20:1.4(a)(3).[3]

[Count 4] By intentionally providing false information to [F.M.] regarding case status and his efforts taken on [F.M.'s] behalf, and further, by creating fake documents to lend support to the

---

[1] SCR 20:1.2(a) provides:

Subject to pars. (c) and (d), a lawyer shall abide by a client's decisions concerning the objectives of representation and, as required by SCR 20:1.4, shall consult with the client as to the means by which they are to be pursued. A lawyer may take such action on behalf of the client as is impliedly authorized to carry out the representation. A lawyer shall abide by a client's decision whether to settle a matter. In a criminal case or any proceeding that could result in deprivation of liberty, the lawyer shall abide by the client's decision, after consultation with the lawyer, as to a plea to be entered, whether to waive jury trial and whether the client will testify.

[2] SCR 20:1.4(a)(1) and (2) provide: "A lawyer shall: (1) Promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in SCR 20:1.0(f), is required by these rules; (2) reasonably consult with the client about the means by which the client's objectives are to be accomplished."

[3] SCR 20:1.4(a)(3) provides that a lawyer shall "keep the client reasonably informed about the status of the matter."

7

misrepresentations made to his client, [Attorney] Spangler violated SCR 20:8.4(c).[4]

¶15 Attorney Spangler filed an answer to the OLR's complaint on January 12, 2015.  The referee was appointed on January 27, 2015.

¶16 On April 1, 2015, the parties filed a stipulation whereby Attorney Spangler admitted the allegations in the OLR's complaint.  The parties jointly recommended the imposition of a public reprimand.  The stipulation provided that the referee may, if he saw fit, adopt paragraphs 1-27 of the stipulation as his findings of fact and adopt paragraphs 28-31 of the stipulation as his conclusions of law.  On April 16, 2015, the referee issued a report expressly adopting by reference and incorporating as though fully set forth in the report paragraphs 1-31 of the stipulation.  The referee said he was satisfied that the parties' agreement for a public reprimand was an appropriate level of discipline.

¶17 On June 23, 2015, this court ordered the parties to show cause why a suspension of Attorney Spangler's license, rather than a public reprimand, should not be imposed.  The OLR filed a response on July 6, 2015.  On August 6, 2015, this court

---

[4] SCR 20:8.4(c) provides that it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

granted Attorney Spangler's motion for an extension of time to file a response. On August 26, 2015, the parties filed a joint motion to remand the matter to the referee for additional findings. The motion averred that counsel for Attorney Spangler had informed the OLR that they had received additional documents from counsel for Attorney Spangler's former law firm revealing an additional possible violation of Wisconsin supreme court rules that was substantially the same in nature as the violation involved in the pending action and occurring during roughly the same time frame as the conduct at issue in the pending proceeding. The parties agreed that the new information would be best processed in conjunction with and in the context of the existing disciplinary proceeding. The OLR said it was likely that the new information would result in a supplemental or amended stipulation and in the referee supplementing or otherwise amending his report. This court granted the motion for remand to the referee on September 10, 2015.

¶18 On March 7, 2016, the parties filed an additional stipulation which set forth three additional counts of professional misconduct arising out of Attorney Spangler's representation of F.B. The stipulation stated that between September 2003 and February 2011, Attorney Spangler was employed as an attorney by the law firm of Weld, Riley, Prenn & Ricci, S.C. [Weld Riley] in Eau Claire and practiced in the areas of

transactional work, real estate work, and some estate planning work.

¶19 The stipulation stated that in December 2006, F.B. sent Attorney Spangler a letter saying that he owned 50% of a Wisconsin limited liability company, that his partner and another person were trying to force him out, and that he would like to file suit for breach of contract.

¶20 The stipulation stated that on or about January 5, 2007, an attorney of the Weld Riley law firm met with F.B. to discuss representing him in regard to the business dispute. On or about January 11, 2007, the Weld Riley attorney sent F.B. an engagement letter saying that the attorney and Attorney Spangler would be the principal attorneys assigned to the case.

¶21 On January 22, 2007, Attorney Spangler sent a draft complaint to F.B. Attorney Spangler was also in communication with the attorney representing F.B.'s business partners in an attempt to negotiate a resolution to the dispute. During the first half of 2007, letters exchanged between Attorney Spangler and counsel for the other side did not result in a settlement of the disputed issues. On April 16, 2007, the attorney for F.B.'s business partner sent Attorney Spangler a settlement offer in the amount of $30,000. Attorney Spangler transmitted that offer to F.B., but the offer was not acceptable to F.B. and he rejected it.

¶22 On May 19, 2007, Attorney Spangler sent an internal memorandum to the head of litigation at Weld Riley, noting that the F.B. matter was "a somewhat complicated business divorce" that was "now ripe for litigation." Attorney Spangler asked "if someone would be able to handle litigation on this matter" for him. The stipulation avers that Attorney Spangler never wanted to handle litigation, did not know what he was doing with litigation, and was reaching out to request that one of his litigation colleagues handle the matter.

¶23 Attorney Spangler provided a copy of a draft complaint to one of the litigation associates at Weld Riley for review. In July 2007, a draft complaint, summons, and letter transmitting the complaint to the Eau Claire County circuit court clerk were prepared bearing signature lines for the litigation associate's signature. The documents were never sent or filed with the court. On August 14, 2007, Attorney Spangler emailed F.B. saying he had received a voice mail message from F.B. and that he and his litigation colleague were "finalizing a summons and complaint which we can file assuming the liquidation took place as we believe it did." On August 22, 2007, F.B. sent Attorney Spangler an email giving him a "green light" on drafting the summons and complaint.

¶24 Attorney Spangler subsequently sent F.B. a draft complaint for his review. The complaint was revised several

11

times until F.B. was satisfied with it. Attorney Spangler fabricated a purported letter of transmittal on Weld Riley law firm letterhead addressed to the Eau Claire County clerk of circuit court stating that an original and three copies of a summons and complaint, along with a check in the amount of $256 in payment of the filing fee, were enclosed. The purported letter was never sent to the clerk of court, but it was sent to F.B. The letter was created by Attorney Spangler for the sole purpose of misleading F.B. into believing Attorney Spangler was sending the complaint with a summons to the clerk of court commencing a lawsuit on F.B.'s behalf. Attorney Spangler printed across the top of each of the eight pages of the complaint "cv-1105200704 Monday, November 05, 2007 10:21 EAU CLAIRE COUNTY CLERK OF COURTS" to make it appear that such complaint had in fact been filed in the Eau Claire County clerk of courts' office. On the first page of the complaint, Attorney Spangler affixed a partial ink stamp saying "RECEIVED NOV 05." The complaint was never sent to or filed with the Eau Claire County clerk of court.

¶25 Attorney Spangler provided a copy of the transmittal letter and complaint to F.B. F.B. reasonably believed the documents to be an authentic filing with the Eau Claire County circuit court when, in fact, the documents had been fabricated and created only to deceive F.B.

¶26 Over the course of approximately five years, Attorney Spangler continued the ruse, repeatedly making false representations to F.B. about developments, events, and occurrences as the non-existing case supposedly progressed. Among the reasons that Attorney Spangler told F.B. the case was moving slowly were the outcome of a supposed summary judgment motion that Attorney Spangler told F.B. he had filed and a forthcoming opinion that Attorney Spangler told F.B. the Wisconsin supreme court was expected to issue in a case with issues relevant to issues in F.B.'s supposed case.

¶27 When Attorney Spangler left the Weld Riley law firm in early 2011 and joined with other attorneys in establishing a new law firm, F.B. continued as Attorney Spangler's client. Attorney Spangler's deception of F.B. ultimately included the creation of a false settlement, fabrication of a release, and Attorney Spangler's use of his own money to pay F.B. $75,000. The money was falsely presented to F.B. as purportedly emanating from a settling party when in fact no such settlement existed.

¶28 The stipulation averred that the OLR's additional fact finding revealed that Attorney Spangler committed the following counts of misconduct with respect to his representation of F.B.:

> By misleading [F.B.] into believing that he had filed and had, for years, been prosecuting a lawsuit on [F.B's] behalf against his former business associate, in accordance with [F.B.'s] decision to proceed with such litigation, when he had, in fact, never filed

13

such lawsuit, [Attorney] Spangler failed to abide by his client's decision concerning the objectives of representation, in violation of SCR 20:1.2(a).

By informing [F.B.] that he had filed a lawsuit on [F.B.'s] behalf against his former business associate; he was, for years, actively prosecuting such pending lawsuit; and [F.B.'s] case was settled by the defendants paying $80,000 with an exchange of releases when [Attorney] Spangler knew no lawsuit had ever been filed, [Attorney] Spangler failed to keep the client reasonably informed about the status of the matter, contrary to SCR 20:1.4(a)(3, and also that [Attorney] Spangler failed to explain a matter to the extent reasonably necessary to permit the client to make an informed decision regarding the misrepresentation, contrary to SCR 20:1.4(b).[5]

By fabricating a false complaint and a bogus letter of transmittal to the Clerk of Court which was provided to [F.B.] with the intent to deceive him, by intentionally misrepresenting to [F.B.] that a lawsuit had been filed on his behalf and was, for years, being prosecuted against his former business associate, by falsely leading his client to believe that a motion for summary judgment was filed and denied by the Court and by falsely informing [F.B.] that his former business associate had paid $80,000 in connection with a settlement of the lawsuit and the signing of releases, [Attorney] Spangler engaged in conduct involving dishonesty, deceit and misrepresentation, in violation of SCR 20:8.4(c).

¶29 The stipulation noted that Attorney Spangler's counsel forwarded four affidavits on Attorney Spangler's behalf, which were reviewed and considered by the OLR director. The affidavits included testimony from two character witnesses who have known Attorney Spangler personally and professionally, an

---

[5] SCR 20:1.4(b) provides: "A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."

14

affidavit of Attorney Spangler's counsel regarding counsel's communications with F.B., who advised Attorney Spangler's counsel that he was satisfied with the $75,000 he received from Attorney Spangler as a settlement for the lawsuit that was never brought, and an affidavit of Attorney Spangler in which he notes the professional and personal cost he has borne because of his actions. The parties agreed and stipulated that a 60-day suspension of Attorney Spangler's license to practice law was an appropriate sanction for his misconduct. The parties requested the referee to approve the additional stipulation and file a supplemental or amended report and recommendation.

¶30 On March 7, 2016, the referee filed a supplemental report adopting paragraphs numbered 1-23 in the second stipulation as additional findings of fact and adopting as conclusions of law paragraphs 24a-24c of the second stipulation.

¶31 The referee agreed with the parties that a 60-day suspension of Attorney Spangler's license was an appropriate sanction. While the referee agreed that Attorney Spangler clearly breached his legal duties to his clients, the legal profession, the public interest, and the rules of professional conduct, the referee noted that Attorney Spangler "has stepped forward as a responsible person by fully admitting his professional failures." The referee also noted Attorney Spangler has provided financial recompense to the satisfaction

15

of his client.  In addition, the referee said the three affidavits supplied by Attorney Spangler were further evidence of the high community respect for Attorney Spangler.  The referee said:

> The sad thing about this whole matter is that there was no need for [Attorney Spangler] to mislead his client.  All that [Attorney Spangler] needed to do was to admit to his law firm that he felt incapable of taking on and initiating contested litigation.  If the law firm was unsympathetic, he could have expressed his regrets to his client and turned down the case, referring the client to outside counsel.  Instead, he took on years of subterfuge in misleading the client.

¶32 Considering all of the rather unusual circumstances involved, the referee agreed with the parties that a 60-day suspension was an appropriate sanction.  The referee also recommended that Attorney Spangler pay the costs of the proceeding.

¶33 A referee's findings of fact are affirmed unless clearly erroneous.  Conclusions of law are reviewed de novo. See In re Disciplinary Proceedings Against Eisenberg, 2004 WI 14, ¶5, 269 Wis. 2d 43, 675 N.W.2d 747.  The court may impose whatever sanction it sees fit, regardless of the referee's recommendation.  See In re Disciplinary Proceedings Against Widule, 2003 WI 34, ¶44, 261 Wis. 2d 45, 660 N.W.2d 686.

¶34  There is no showing that any of the referee's findings of fact are clearly erroneous.  Accordingly, we adopt them.  We

16

also agree with the referee's conclusions of law that Attorney Spangler violated the supreme court rules set forth above.

¶35 With respect to the appropriate level of discipline, upon careful review of the matter, we conclude that a 60-day suspension is an inadequate sanction. Attorney Spangler's actions in the two cases at issue here are troubling. Attorney Spangler engaged in an elaborate web of deception that included creating false documents and meticulously adding fake file stamps and other notations to make them appear to be genuine. He managed to perpetuate his ruses for years, leading his clients to believe that they had live lawsuits pending when, in fact, Attorney Spangler had voluntarily dismissed F.M.'s suit and never filed F.B.'s action.

¶36 In many cases that come before this court, an attorney accepts a retainer and then fails to do the work for which he or she was retained. Such behavior is undoubtedly serious, but it is a passive type of error. Attorney Spangler's conduct in creating a series of false documents for the sole purpose of misleading his clients into believing that they had lawsuits pending was an affirmative act of deception and a betrayal of the trust his clients placed in him.

¶37 We recognize that there are a number of mitigating factors here. Attorney Spangler has no prior disciplinary history. The conduct at issue occurred between 2007 and 2011.

17

We note that in its response to this court's order to show cause, the OLR commented that Attorney Spangler had alerted the OLR to some significant family concerns and problems and, according to Attorney Spangler, F.M. turned out to be a difficult client with whom Attorney Spangler did not feel he could be candid once he concluded F.M.'s case was not as strong as Attorney Spangler initially thought. We also note that Attorney Spangler has repeatedly expressed remorse for his misconduct and he has paid restitution to both clients. We have also reviewed the affidavits filed on Attorney Spangler's behalf and note that the affiants speak highly of him and find him to be trustworthy. Nonetheless, the seriousness of the misconduct at issue here leads us to conclude that a suspension in excess of 60 days is warranted.

¶38 Although no two disciplinary proceedings are identical, we note that on at least two prior occasions, we disciplined attorneys who falsified documents. In In re Disciplinary Proceedings Against Fitzgerald, 2006 WI 58, 290 Wis. 2d 713, 714 N.W.2d 925, an attorney told her client that an insurance company was willing to settle her claims for a payment of some $5,000 and that the insurance company would also pay the client's medical bills when, in fact, no such offer was ever made. To perpetuate the ruse that a settlement had been made, the attorney deposited personal funds into her business account

18

and then transferred those funds to her trust account for the purpose of using the funds to pay her client her proportionate share of the purported settlement. The attorney was suspended for 90 days. She had no prior disciplinary history.

¶39 In In re Disciplinary Proceedings Against Mauch, 2007 WI 109, 304 Wis. 2d 541, 736 N.W.2d 141, an attorney deceived a client into believing his case had been settled and used his own funds to pay the alleged settlement. The attorney's license was suspended for 90 days. Attorney Mauch had previously been publicly reprimanded on two occasions.

¶40 Even though Attorney Spangler has no prior disciplinary history and even though we acknowledge the existence of various other mitigating factors, we conclude that the misconduct at issue here is more serious than the misconduct at issue in either Fitzgerald or Mauch and calls for a more severe sanction. The ruses in Fitzgerald and Mauch were of relatively short duration and involved only one case. By contrast, Attorney Spangler falsified documents in two cases and, over the span of years, created a whole host of documents for the sole purpose of misleading his clients into believing that their suits were pending when in fact they were not. Accordingly, we conclude that a six-month suspension of Attorney Spangler's license to practice law in Wisconsin is an appropriate sanction. A six-month suspension, which will

19

require Attorney Spangler to file a petition for reinstatement, see SCR 22.28(3), will impress upon him the seriousness of his misconduct and deter other attorneys from engaging in similar misconduct in the future. We agree with the referee that Attorney Spangler should bear the full costs of this proceeding.

¶41 IT IS ORDERED that the license of William J. Spangler to practice law in Wisconsin is suspended for a period of six months, effective August 12, 2016.

¶42 IT IS FURTHER ORDERED that within 60 days of the date of this order, William J. Spangler shall pay to the Office of Lawyer Regulation the costs of this proceeding, which are $6,678.43.

¶43 IT IS FURTHER ORDERED that William J. Spangler shall comply with the provisions of SCR 22.26 concerning the duties of an attorney whose license to practice law has been suspended.

¶44 IT IS FURTHER ORDERED that compliance with all conditions of this order is required for reinstatement. See SCR 22.28(2).