# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2018AP540-D |

| | |
|---|---|
| COMPLETE TITLE: | In the Matter of Disciplinary Proceedings Against Beth M. Bant, Attorney at Law:<br><br>Office of Lawyer Regulation,<br>      Complainant- Respondent,<br>  v.<br>Beth M. Bant,<br>      Respondent- Appellant. |

DISCIPLINARY PROCEEDINGS AGAINST BANT

| | |
|---|---|
| OPINION FILED: | December 18, 2019 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | |
| COUNTY: | |
| JUDGE: | |

| | |
|---|---|
| JUSTICES: | |
| NOT PARTICIPATING: | |

ATTORNEYS:

For the respondent-appellant, there were briefs filed by *Peyton Engel* and *Hurley Burish, S.C.*, Madison.

For the complainant-respondent, there was a brief filed by *Kim M. Kluck* an *Office of Lawyer Regulation*

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No.   2018AP540-D

STATE OF WISCONSIN          :          IN SUPREME COURT

**In the Matter of Disciplinary Proceedings Against Beth M. Bant, Attorney at Law:**

**Office of Lawyer Regulation,**

        **Complainant-Respondent,**

        **v.**

**Beth M. Bant,**

        **Respondent-Appellant.**

**FILED**

**DEC 18, 2019**

Sheila T. Reiff
Clerk of Supreme Court

ATTORNEY disciplinary proceeding.  *Attorney's license suspended.*

¶1   PER CURIAM.   Attorney Beth M. Bant appeals the report of Robert E. Kinney, referee, recommending that this court suspend her Wisconsin law license for six months, impose the full costs of this proceeding, and order her to undergo a psychological evaluation for consideration at any future reinstatement proceeding.  The referee determined that Attorney Bant committed the two counts of misconduct that the Office of Lawyer Regulation (OLR) complaint alleged and to which she eventually stipulated: engaging in conduct involving dishonesty, fraud, deceit, or

misrepresentation, in violation of Supreme Court Rule (SCR) 20:8.4(c),[1] and violating a standard of conduct set forth in one of this court's decisions, in violation of SCR 20:8.4(f).[2]

¶2 After fully reviewing this matter, we reject all but one of Attorney Bant's arguments on appeal. We accept the referee's findings of fact (with one minor exception, noted below), and we agree that those facts establish that Attorney Bant committed the two misconduct counts brought by the OLR. We further agree with the referee that those violations require the imposition of a six-month suspension. We also determine that Attorney Bant should be required to pay the full costs of this proceeding, which total $10,177.91 as of July 11, 2019. We do not, however, accept the referee's recommendation that Attorney Bant undergo a psychological evaluation at this time.

¶3 Attorney Bant was licensed to practice law in Wisconsin in 2013. She has no disciplinary history.

¶4 On March 22, 2018, the OLR filed a complaint alleging two counts of misconduct arising out of Attorney Bant's work as an in-house lawyer for an insurance company headquartered in Wisconsin. Attorney Bant filed an answer in which she admitted some of the OLR's factual allegations, but denied that she engaged

---

[1] SCR 20:8.4(c) provides: "It is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

[2] SCR 20:8.4(f) provides: "It is professional misconduct for a lawyer to violate a statute, supreme court rule, supreme court order or supreme court decision regulating the conduct of lawyers."

2

in professional misconduct. In July 2018, the parties entered into a stipulation in which Attorney Bant admitted certain facts, as well as the two counts of misconduct alleged in the OLR's complaint. In December 2018, Attorney Bant filed an amended answer that was consistent with the parties' stipulation. The referee then held a hearing at which he confirmed Attorney Bant's admissions of misconduct and took evidence to facilitate his recommendation as to the appropriate sanction.

¶5 The referee filed his report on March 21, 2019. Attorney Bant timely appealed from the referee's report. The referee's report and the exhibits received at the evidentiary hearing may be summarized as follows.

¶6 From February 2014 through December 2016, Attorney Bant worked as an in-house lawyer for an insurance company headquartered in Wisconsin.

¶7 In October 2016, Attorney Bant and her supervisor agreed that Attorney Bant would attend an American Bar Association seminar in New Orleans, Louisiana. On October 31, 2016, Attorney Bant submitted a request for reimbursement of the $1,115 fee listed on a fabricated seminar registration receipt that Attorney Bant had created using computer editing software. The fabricated receipt listed the dates of the seminar as December 8 and 9, 2016, even though the seminar was actually scheduled to take place on November 3 and 4, 2016. Attorney Bant's employer paid her the requested sum of $1,115 for the seminar fee.

¶8 Attorney Bant told her employer that she would fly to New Orleans for the seminar on Wednesday, December 7, 2016, and

3

would attend the seminar on December 8 and 9, 2016. But Attorney Bant did not go to New Orleans on those dates; as mentioned above, the seminar had occurred over a month earlier. A coworker spotted Attorney Bant in town on the morning of Friday, December 9, 2016.

¶9 Sometime in December 2016, Attorney Bant had uploaded, but had not yet formally submitted for reimbursement, the following fabricated travel receipts into her employer's expense system.

- A receipt for the Windsor Court Hotel in New Orleans for the nights of December 7, 8, and 9, 2016, in the amount of $1,562.92. Attorney Bant fabricated this receipt by using computer editing software to modify a prior receipt from a different hotel. Attorney Bant's modifications included copying the Windsor Court Hotel logo from their website and adding it to the prior receipt, and changing the dates on the prior receipt.

- A receipt for a restaurant meal in New Orleans for the date of December 8, 2016 in the amount of $43. Attorney Bant fabricated this receipt by taking a screenshot of an image from the internet and modifying it with editing software.

- Several receipts for Uber car service in New Orleans for the dates of December 7, 8, and 9, 2016, for supposed rides from the airport to the hotel, to a restaurant and back to the hotel, and from the hotel back to the airport. Attorney Bant fabricated these receipts by obtaining emailed price estimates from Uber for certain rides, and then using editing software to insert dates,

4

departure times, and arrival times into the estimates so as to make them look like trip receipts.

- A receipt for a roundtrip airline ticket to and from New Orleans. Attorney Bant testified that she did not know where this document came from or how it was created. There is no dispute, however, that the false receipt was uploaded to her employer's expense reporting system.

¶10 On Monday morning, December 12, 2016, Attorney Bant's supervisor confronted her about her supposed trip to New Orleans, noting that she had been spotted in town on the morning of Friday, December 9, 2016. Attorney Bant said that she had left New Orleans early Friday morning because she wasn't feeling well and wasn't learning anything from the seminar. Attorney Bant's supervisor then asked her to provide a timeline of her activities from Wednesday, December 7 through Friday, December 9. Attorney Bant handwrote a timeline that was entirely false. She claimed in the timeline that she flew to New Orleans on Wednesday, December 7; attended the seminar on Thursday; dined at specific restaurants; took Uber car service to specific locations; and flew home on Friday, December 9. When Attorney Bant gave the timeline to her supervisor, she told her supervisor that she had been physically assaulted while in New Orleans, resulting in bruising to various parts of her body.

¶11 A subsequent audit of Attorney Bant's travel and expense claims revealed a fraudulent charge of $557.28 for three nights at a hotel in Madison, Wisconsin, from June 7 through 10, 2016. Attorney Bant had, in fact, attended a legal education seminar in

Madison during that time, but her claim for reimbursement for hotel expenses was fraudulent. Attorney Bant had been paid $557.28 as a result of this improper request for reimbursement.

¶12 Attorney Bant's employer terminated her employment in mid-December 2016, shortly after her fraudulent expense reports came to light. In February 2017, Attorney Bant voluntarily reimbursed her employer $1,115 for the seminar registration fee payment, and $557.28 related to the June 2016 hotel expense payment.

¶13 The parties stipulated, and the referee determined, that by making false statements and submitting falsified documents in order to obtain reimbursement for expenses not actually incurred, and by providing false statements and falsified documents to her employer after she was confronted with questions regarding her requests for expense reimbursement, Attorney Bant violated SCR 20:8.4(c).

¶14 The parties further stipulated, and the referee further determined, that by making false statements and submitting falsified documents in order to obtain reimbursement for expenses not actually incurred, and by providing false statements and falsified documents to her employer after she was confronted with questions regarding her requests for expense reimbursement, Attorney Bant violated a standard of conduct set forth in In re

<u>Disciplinary Proceedings Against Shea</u>, 190 Wis. 2d 560, 527 N.W.2d 314 (1995),[3] actionable via SCR 20:8.4(f).

¶15 As discipline for Attorney Bant's misconduct, the referee recommended that the court suspend Attorney Bant for six months——the length of suspension sought by the OLR. In making this recommendation, the referee rejected Attorney Bant's call for a more modest suspension of 60 days. Attorney Bant attempted to justify this minimal suspension by explaining that she had inadvertently mixed up the dates of the New Orleans seminar, causing her to be unable to attend the seminar when it was actually held in November, and she feigned her attendance at the seminar in December because she was afraid that her supervisor——whom she described as "intimat[ing]" and "potentially vindictive"——would fire her for missing it.

¶16 The referee was unpersuaded by Attorney Bant's argument for various reasons, including the following. First, according to the referee, the evidence showed that, far from being on thin ice with her supervisor, Attorney Bant was about to receive a major promotion with the backing of her supervisor. Second, the referee noted that Attorney Bant submitted the fraudulent seminar receipt for reimbursement on October 31, 2016——before the seminar actually took place on November 3 and 4, 2016——thereby casting doubt on her claim that she had submitted the fraudulent receipt in order to

---

[3] <u>In re Disciplinary Proceedings Against Shea</u>, 190 Wis. 2d 560, 527 N.W.2d 314 (1995) holds that an attorney has a fiduciary duty and a duty of honesty in the attorney's professional dealings with the attorney's law firm.

conceal the fact that she had missed the seminar. Third, the referee pointed out that this was not the first time Attorney Bant had submitted a false hotel receipt for reimbursement; six months earlier, she had submitted a false hotel receipt related to a seminar in Madison. Fourth, the referee explained that Attorney Bant's deceitful behavior showed especially poor judgment given that she was not only an attorney but also a certified public accountant and a certified fraud examiner; indeed, she had drafted her employer's ethics handbook for all employees.

¶17 In light of the above, the referee stated that a six-month suspension was both factually justified and well within the range of discipline imposed in arguably analogous situations; namely, In re Disciplinary Proceedings Against Siderits, 2013 WI 2, 345 Wis. 2d 89, 824 N.W.2d 812 (one-year license suspension for the respondent-lawyer's manipulation of his billing records for the sole purpose of collecting almost $47,000 in bonuses over a two-year period), and Shea, 190 Wis. 2d 560 (1995) (six-month license suspension for the respondent-lawyer's concealment from his law firm of his receipt of a $75,000 legal fee from a client while the firm was not being paid in full for legal fees, and misrepresentation of the quality of work of another attorney in the firm for purposes of his own financial gain).

¶18 The referee also recommended that the court require Attorney Bant to undergo a psychological assessment for use at any future reinstatement hearing. The referee wrote that although no testimony regarding Attorney Bant's mental health was presented at the hearing:

> [I]t is hard for this referee to fathom why, for the paltry sum of money involved here, Attorney Bant would have jeopardized her employment and her professional licenses. Having heard the testimony, and based on my years of experience, I believe there may have been a psychological component to Bant's behavior.

¶19 Attorney Bant appeals. In conducting our review, we will affirm the referee's findings of fact unless they are found to be clearly erroneous, but we will review the referee's conclusions of law on a de novo basis. See In re Disciplinary Proceedings Against Inglimo, 2007 WI 126, ¶5, 305 Wis. 2d 71, 740 N.W.2d 125. The court may impose whatever sanction it sees fit regardless of the referee's recommendation. See In re Disciplinary Proceedings Against Widule, 2003 WI 34, ¶44, 261 Wis. 2d 45, 660 N.W.2d 686.

¶20 In her appellate briefing, Attorney Bant challenges the referee's disciplinary recommendation as tainted by various factual missteps. She argues that the referee clearly erred by describing her fabricated seminar receipt as a fabricated seminar "flyer" that she showed her supervisor when they first discussed the prospect of her attending the seminar. This errant factual description, Attorney Bant says, led the referee to the mistaken conclusion that the trip to the seminar was a ruse from the outset, when this is not so: she had genuinely planned to go to the seminar, but was unable to attend because she mixed up the dates. The referee also erred, Attorney Bant claims, by assuming that at the time she submitted the fabricated seminar receipt for reimbursement on October 31, 2016, she could have actually attended the seminar on November 3 and 4, 2016, and simply chose not to do

so. There is no evidence that she could have actually attended the conference on those dates, Attorney Bant claims. Attorney Bant also faults the referee for stating that the evidence suggests her misconduct was financially motivated; Attorney Bant insists her motivation was job preservation, as she testified at the evidentiary hearing. Attorney Bant also claims that the referee wrongly believed she was projecting blame on others for her misconduct. To the contrary, she says, she has "only endeavored to explain how, as a new attorney in her first attorney job, the combination of a toxic corporate environment and a manipulative supervisor eroded her good judgment."

¶21 Attorney Bant further argues that the cases cited by the referee——Shea and Siderits——are distinguishable. Both involved misappropriation of more money than that involved in this case, by more experienced attorneys, through courses of misconduct that spanned far longer than hers. Attorney Bant contends that other, more analogous cases call for a 60-day suspension, such as In re Disciplinary Proceedings Against Davig Huesmann, 2018 WI 114, 385 Wis. 2d 49, 922 N.W.2d 498 (2018) (60-day suspension for numerous trust account violations, including the conversion of over $13,000), In re Disciplinary Proceedings Against Bartz, 2015 WI 61, 362 Wis. 2d 752, 864 N.W.2d 881 (60-day suspension for, among other things, failure to disburse settlement funds and misappropriation of trust funds, resulting in a restitution order of over $3,000), In re Disciplinary Proceedings Against Kitto, 2018 WI 71, 382 Wis. 2d 368, 913 N.W.2d 874 (60-day suspension for mishandling funds and converting about $10,000 of funds to personal

use), and In re Disciplinary Proceedings Against Casey, 174 Wis. 2d 341, 342-43, 496 N.W.2d 94, 95 (1993) (60-day suspension for misappropriation of three client retainers, totaling $2,300). Attorney Bant insists that in the face of these cases, a six-month suspension for her misconduct would be "arbitrarily harsh."

¶22 Finally, Attorney Bant argues that the referee's recommendation for a psychological examination was inappropriate for a number of reasons, including the absence of evidence in the record regarding her mental health.

¶23 In its appellate briefing, the OLR disputes Attorney Bant's arguments, with limited exceptions. It concedes that the referee should not have described the fabricated seminar receipt that Attorney Bant submitted for reimbursement as a "flyer" that she showed her supervisor to obtain permission to attend the seminar in the first place. The OLR submits, however, that this mistake had no bearing on the referee's ultimate disciplinary recommendation. The referee correctly determined that Attorney Bant's conduct in creating and submitting the falsified receipt was intentional, fraudulent, and deserving of a lengthy suspension, especially in light of the surrounding circumstances; e.g., her lies to her supervisor when caught; her submission of false hotel receipts for reimbursement on two separate occasions, months apart; her continued attempt to blame her misconduct on her work environment and her supervisor; and her decision to submit a fabricated seminar receipt at a time (October 31, 2016) when she could have still registered for the early November seminar. The OLR also cites a variety of cases in support of a six-month

11

suspension, including <u>Siderits</u>, <u>Shea</u>, and <u>In re Disciplinary Proceedings Against Glasbrenner</u>, 2005 WI 50, 280 Wis. 2d 37, 695 N.W.2d 291 (six-month suspension for associate who overbilled the state public defender's office on appointed cases as a result of sloppy billing habits). The OLR agrees with Attorney Bant, however, that there is no cause for her to undergo a psychological assessment now, and suggests that the need for such an assessment can be addressed during any future reinstatement proceeding.

¶24 After conducting our review, we find no basis to conclude that the referee's findings of fact are clearly erroneous, with one minor exception that has no bearing on whether Attorney Bant engaged in misconduct deserving of a six-month suspension. As mentioned above, Attorney Bant insists, and the OLR agrees, that the referee incorrectly described Attorney Bant's seminar documentation as a fabricated "flyer" that she showed her supervisor in order to obtain permission to attend the seminar, when the document was actually a fabricated seminar registration receipt that she uploaded to her employer's expense reporting system to obtain reimbursement. We fail to see how such differences matter. Whether one labels the fabricated seminar document a "receipt" or a "flyer," and whether Attorney Bant submitted the document to her supervisor or her company's procurement department, the core, undisputed facts remain the same: Attorney Bant submitted a phony document to her employer in order to perpetuate a ruse that she would be traveling to New Orleans to attend a seminar that she knew she would not actually attend. We note, too, that while Attorney Bant criticizes various

aspects of the referee's factual discussion, she does not directly challenge any other factual findings by the referee as clearly erroneous. Thus, we accept and adopt all but the referee's finding that Attorney Bant showed her supervisor an altered seminar "flyer" in order to obtain permission to attend the seminar, and we hold that this single erroneous finding is immaterial to the outcome.

¶25 As for the referee's legal conclusions of misconduct, we note that while Attorney Bant attempts to downplay the severity of her misconduct, she does not claim that the facts as found by the referee fail to satisfy the elements of the two counts against her. Our review of the matter leads us to agree with the referee that the facts of this case establish a conclusion of misconduct on each of the two counts alleged by the OLR.

¶26 Turning now to the question of the proper level of discipline, we agree with the referee's recommendation for a six-month license suspension. Our precedent demonstrates that this court takes a dim view of a lawyer's creation and use of false documentation for the purpose of misleading others. For example, in In re Disciplinary Proceedings Against Donovan, 211 Wis. 2d 451, 564 N.W.2d 772 (1997), this court imposed a six-month license suspension on an attorney who filed false documents with the court in order to obtain favorable treatment for an acquaintance and for a former boyfriend in cases she was prosecuting as a municipal attorney. In In re Disciplinary Proceedings Against Spangler, 2016 WI 61, 370 Wis. 2d 369, 881 N.W.2d 35, this court imposed a six-month suspension on an attorney who created an array of meticulously faked documents to support

13

false representations made to his clients that their lawsuits were pending when in fact they were not. We particularly noted in Spangler that the misconduct involved was not "a passive type of error," but was rather "an affirmative act of deception and a betrayal of the trust" others had placed in the respondent-lawyer. Id., ¶36.

¶27 Donovan, Spangler, and this case are alike in significant ways. In all three cases, the lawyers committed affirmative acts of deception by creating false documentation for the sole purpose of misleading others. In all three cases, the lawyers had no disciplinary history. See Donovan, 211 Wis. 2d at 456; Spangler, 370 Wis. 2d 369, ¶3. In all three cases, the lawyers and the OLR reached stipulations as to the lawyers' misconduct. See Donovan, 211 Wis. 2d at 452; Spangler, 370 Wis. 2d 369, ¶¶16-18. In all three cases, restitution was not an issue: Attorney Donovan did not benefit financially from her misconduct, and Attorney Spangler, like Attorney Bant, had already paid restitution by the time this court issued its disciplinary decision. See Donovan, 211 Wis. 2d at 456; Spangler, 370 Wis. 2d 369, ¶37. In all three cases, the lawyers demonstrated remorse. See Donovan, 211 Wis. 2d at 457; Spangler, 370 Wis. 2d 369, ¶37.

¶28 To be sure, the cases are not exactly alike. Attorney Donovan filed false documents with the court, see Donovan, 211 Wis. 2d at 452, whereas Attorney Bant fabricated documents intended only for her company's internal use. Attorney Spangler perpetuated a ruse that went on for years, see Spangler, 370

14

Wis. 2d 369, ¶¶7-28, whereas Attorney Bant's subterfuge was comparatively brief. The number of counts of misconduct alleged and proven against Attorney Bant (two) is less than the number of misconduct counts involved in Donovan (three) and in Spangler (seven). See Donovan, 211 Wis. 2d at 454-56; Spangler, 370 Wis. 2d 369, ¶¶1-2.

¶29 In the end, however, we find the misconduct here to be sufficiently analogous to that in Donovan and Spangler to justify the same suspension length: six months. Like the respondent-lawyers' conduct in Donovan and Spangler, Attorney Bant's conduct was laced with calculated dishonesty, from the time of the first false hotel receipt she submitted in June 2016 through the time, in December 2016, she submitted an assortment of meticulously faked receipts purporting to establish her visit to a city in which she had not stepped foot, for a conference she could not possibly have attended. When her employer questioned her story, she doubled down on it, drafting a detailed fictional account of her time in New Orleans and claiming to have been physically assaulted there. Although Attorney Bant argues on appeal that her misconduct was not as severe as it seems——a misguided attempt to cover-up a scheduling error in a difficult work environment——the referee found this explanation incredible; he wrote that "there does not appear to be" a "fathomable factual nexus between her conduct and the explanation she has given." This is not the forum for reweighing Attorney Bant's credibility. See In re Disciplinary Proceedings Against Lister, 2010 WI 108, ¶32, 329 Wis. 2d 289, 787 N.W.2d 820 (referee is the ultimate arbiter of credibility).

¶30 The public, the courts, and the Wisconsin legal profession deserve the assurance that, before Attorney Bant resumes practice, she will have successfully demonstrated to this court that she has made efforts to remedy the causes of her misbehavior. The six-month suspension justified by our case law is therefore necessary. See SCR 22.28(3).

¶31 We depart, however, from the referee's recommendation that Attorney Bant undergo a psychological assessment at this time. We see no basis for a psychological assessment.

¶32 Because Attorney Bant has already made full restitution to her former employer, no restitution award is sought, and none is ordered.

¶33 Finally, as is our general practice, we impose full costs on Attorney Bant, which total $10,177.91 as of July 11, 2019. Neither the OLR nor Attorney Bant challenges the imposition of full costs.

¶34 IT IS ORDERED that the license of Beth M. Bant to practice law in Wisconsin is suspended for a period of six months, effective January 29, 2020.

¶35 IT IS FURTHER ORDERED that within 60 days of the date of this order, Beth M. Bant shall pay to the Office of Lawyer Regulation the costs of this proceeding, which are $10,177.91 as of July 11, 2019.

¶36 IT IS FURTHER ORDERED that, to the extent that she has not already done so, Beth M. Bant shall comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been suspended.

16

¶37 IT IS FURTHER ORDERED that compliance with all conditions with this order is required for reinstatement. See SCR 22.29(4)(c).