# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE No.: | 2016AP563-D |
| COMPLETE TITLE: | In the Matter of Disciplinary Proceedings Against Michael D. Petersen, Attorney at Law:<br><br>Office of Lawyer Regulation,<br>          Complainant,<br>     v.<br>Michael D. Petersen,<br>          Respondent. |

DISCIPLINARY PROCEEDINGS AGAINST PETERSEN

| | |
|---|---|
| OPINION FILED: | December 15, 2017 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | |
| COUNTY: | |
| JUDGE: | |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | |
| DISSENTED: | A.W. BRADLEY, J. dissents, joined by ABRAHAMSON, J. (opinion filed). |
| NOT PARTICIPATING: | |

| | |
|---|---|
| ATTORNEYS: | |

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. **Error! Reference source not found.**

STATE OF WISCONSIN          :      IN SUPREME COURT

**In the Matter of Disciplinary Proceedings Against Michael D. Petersen, Attorney at Law:**

**Office of Lawyer Regulation,**

      **Complainant,**

  **v.**

**Michael D. Petersen,**

      **Respondent.**

**FILED**

**DEC 15, 2017**

Diane M. Fremgen
Clerk of Supreme Court

ATTORNEY disciplinary proceeding. *Attorney's license suspended.*

¶1 PER CURIAM. We review a report and recommendation of Referee William Eich approving a stipulation filed by the Office of Lawyer Regulation (OLR) and Attorney Michael D. Petersen. In the stipulation, Attorney Petersen stipulated to the facts underlying the nine counts of misconduct alleged in the OLR's complaint and joined the OLR in jointly recommending a one-year suspension of Attorney Petersen's license to practice law in

Wisconsin.  The referee agreed that a one-year suspension was an appropriate sanction for Attorney Petersen's misconduct.

¶2  Upon careful review of the matter, we uphold the referee's findings of fact and conclusions of law and agree that a one-year suspension is an appropriate sanction.  As is our normal practice, we also find it appropriate to impose the full costs of this disciplinary proceeding, which are $2,110.29 as of May 24, 2017, on Attorney Petersen.  Since Attorney Petersen has already made restitution to his client, the OLR does not seek a restitution order.

¶3  Attorney Petersen was admitted to practice law in Wisconsin in 2008.  He practices in Appleton.  He has no prior disciplinary history.

¶4  On March 21, 2016, the OLR filed a complaint against Attorney Petersen alleging nine counts of misconduct.  Attorney Petersen filed an answer on May 19, 2016.  The referee was appointed on June 6, 2016.  The parties' stipulation was filed on October 21, 2016.

¶5  As part of the stipulation, Attorney Petersen admitted the facts alleged in the OLR's complaint.  All nine counts of misconduct arose out of Attorney Petersen's representation of K.F.  In November 2012, K.F. retained Attorney Petersen to represent him in two legal matters.  K.F.'s father, R.F., hired and paid Attorney Petersen and assisted K.F. in communicating with Attorney Petersen throughout the representation.

¶6  In May 2014, Attorney Petersen reached a plea agreement with Outagamie County Assistant District Attorney

2

(ADA) Andrew Maier whereby K.F. would plead to a Class C felony – attempted armed robbery – and two misdemeanor charges would be dismissed.  Attorney Petersen failed to truthfully inform K.F. about the terms of the state's plea offer.

¶7  K.F. decided he was willing to enter a plea to a Class H felony – theft from a person.  The plea hearing was held on May 23, 2015.  Attorney Petersen misled K.F. by telling him to plead no contest to the Class C felony and that the charge would be amended after the hearing to a reduced charge of the Class H felony.  K.F. believed he was entering a plea to the Class H felony.

¶8  Immediately after the plea hearing, when K.F. reviewed the paperwork provided to him in court, K.F. called R.F., who was then with Attorney Petersen, to inform them that the charges and paperwork were incorrect.  Attorney Petersen assured K.F. and R.F. that the charge would be amended within two weeks.

¶9  Despite knowing that the charge would not be amended, Attorney Petersen repeatedly misrepresented to K.F. and R.F. in the following months that he was working with ADA Maier and the judge to obtain the paperwork to get the charge amended.

¶10  On June 4, 2014, Attorney Petersen told R.F. that the clerk of court had amended the felony charge.  This representation was untrue.  The following day, R.F. emailed Attorney Petersen asking for an update on the amended charge.  Attorney Petersen responded by email informing R.F. that he had called ADA Maier and ADA Maier was going to check on the status of the amendment because that was something only the district

attorney could file. Attorney Petersen's representation was untrue as he had never called ADA Maier.

¶11 Attorney Petersen falsely represented to R.F. that ADA Maier had agreed in writing to amend the charge. He claimed he had received an email from ADA Maier and had forwarded it R.F. R.F. never received any such email.

¶12 At a meeting on or about June 11, 2014, R.F. asked Attorney Petersen for a copy of the email that Attorney Petersen claimed he had received from ADA Maier saying that ADA Maier had agreed to amend the charges. Attorney Petersen provided R.F. with a copy of an email he claimed he received on June 6, 2014, in which ADA Maier purportedly wrote, "After we talked this morning and I reviewed the defendant's file, the charge was amended down from a (sic) Armed Robbery to theft from a Person as PTAC." ADA Maier did not author this email, nor had he agreed to amend K.F.'s conviction. Attorney Petersen falsified the ADA Maier email, which he provided to R.F.

¶13 On June 23, 2014, R.F. emailed Attorney Petersen requesting an update on the amended charges. In response, Attorney Petersen spoke with R.F. and told him not to be concerned about the amendment of the charge. He said the district attorney had processed the paperwork and it was with the judge for processing. These representations were untrue.

¶14 On June 24, 2014, Attorney Petersen filed a motion for sentence credit. On July 10, 2014, the court signed an order granting K.F.'s sentence credit.

¶15  On July 18, 2014, Attorney Petersen sent R.F. an email saying he had talked directly with the judge that morning and the judge had assured Attorney Petersen that the paperwork would be completed by the next Friday.  The email also said that ADA Maier was available and that both Attorney Petersen and ADA Maier had explained the situation and lack of objections to amending the charge to the judge.  These representations were untrue.

¶16  On more than one occasion in August 2014, R.F. sent Attorney Petersen emails inquiring about the status of the amended charge.  Attorney Petersen did not respond until August 22, 2104, when he emailed R.F. saying he was waiting to hear from the court about the amendment.  Attorney Petersen claimed, "the judge refuses to talk to me about this case unless ADA Andrew Maier is present, and he has been out of town recently and returns tomorrow."  These representations were untrue.

¶17  On September 5, 2014, R.F. and Attorney Petersen exchanged emails about filing an appeal.  R.F. asked Attorney Petersen to call him because he had numerous questions and was not sure if an appeal should be filed if the amended charges would soon be recorded.  Attorney Petersen spoke with R.F. and mentioned writing a letter to the judge or the district attorney about the delay.

¶18  On September 22, 2014, R.F. emailed Attorney Petersen about the continued delays and said he was considering contacting the Attorney General, the State Bar, or the judge directly.  On September 26, 2014, Attorney Petersen caused the

clerk to schedule a motion hearing on the court's calendar for October 7, 2014, although no corresponding motion was filed. Attorney Petersen told R.F. that the purpose for the hearing was to amend K.F.'s conviction. Attorney Petersen later cancelled the hearing and told R.F. that the matter could be handled over the phone and that the amended charge would soon appear in the online court record. These representations about the hearing were untrue.

¶19 On October 24, 2014, Attorney Petersen sent R.F., via email, a document entitled Order Amending Conviction and Sentence. R.F. was not able to open the email attachment. Attorney Petersen sent the email from his personal account rather than his law office account. Attorney Petersen later told R.F. he had a signed copy of the order amending the charges. On October 31, 2014, R.F. went to Attorney Petersen's office and picked up a document entitled Order Amending Conviction and Sentence. He took the document to the Outagamie County courthouse to confirm it had in fact been entered in K.F.'s case. The clerk's office pointed out the order was not filed stamped by the court. The clerk's office spoke with the judge's judicial assistant, who verified the purported order was not in K.F.'s court file. After speaking to the judge, the judicial assistant called Attorney Petersen to inquire about the order. Attorney Petersen went to the courthouse and examined the order but did not admit he had created it.

¶20 On October 31, 2014, Attorney Petersen called R.F. R.F. told Attorney Petersen it was odd that the order had not

been filed stamped by the court.  Attorney Petersen claimed the order copied for R.F. had been in his mailbox at the courthouse on October 24, 2014, and that the order had not gone through and that Stanley Correctional Institution had rejected the order because it contained the word "modified" rather than "amended."

¶21  On November 3, 2014, Attorney Petersen wrote to the court to explain the origins of the order.  Attorney Petersen was not truthful and did not admit he had falsified the order.  Instead, Attorney Petersen claimed he had copied both an unsigned version of the order and the court's prior signed order for sentence credit to give to R.F. and suggested that the signature from the signed order had somehow been transposed in the copying process.  Attorney Petersen said, " . . . it is possible that I inadvertently created the order.  I do not believe anything criminal was done by my client's father."

¶22  On November 4, 2014, the court contacted the Appleton Police Department to report a possible forgery.  Sergeant Neal Rabas was assigned to investigate the matter.

¶23  On November 10, 2014, Attorney Petersen met with R.F. at his office.  Unbeknownst to Attorney Petersen, R.F. recorded the meeting.  R.F. questioned Attorney Petersen about the order given to him and why it had still not been processed.  Attorney Petersen continued to lie, telling R.F. there had been an error in the order, which he had corrected.  Attorney Petersen claimed that he had submitted the corrected order to ADA Maier for approval the previous week and that he expected to find out from

ADA Maier that day whether it was approved and, if so, Attorney Petersen would take it to the judge for his signature.

¶24 On November 26, 2014, Attorney Petersen was interviewed by police. Attorney Petersen denied that he had copied the judge's signature onto the October 24, 2014 order. Attorney Petersen told Sergeant Rabas that he had given R.F. an unsigned Order to Amend Conviction and Sentence and a copy of the Order for Sentence Credit. When Sergeant Rabas asked Attorney Petersen if he thought R.F. had put the judge's signature on the order, Attorney Petersen replied he did not know and could not answer that.

¶25 During the interview with Sergeant Rabas, Attorney Petersen said there was no agreement with ADA Maier to amend K.F.'s conviction and that it had become a moot point. Sergeant Rabas questioned Attorney Petersen about the email purportedly sent by ADA Maier in June suggesting that the charge was amended. Attorney Petersen claimed he had received the email from ADA Maier but it only meant the charge would be amended if K.F. was not able to obtain the programming he needed in prison. Attorney Petersen did not admit that he had fabricated ADA Maier's email.

¶26 Sergeant Rabas revealed to Attorney Petersen that his November 10, 2014 meeting was recorded and asked him to explain why he was now saying there was no agreement to amend the charge when he had repeatedly told R.F. the charge would be amended. Attorney Petersen ended the interview soon thereafter and said he wanted to speak to an attorney.

¶27 On December 20, 2014, Sergeant Rabas received a handwritten letter from Attorney Petersen saying, "I phonied a document to get Mr. F. off my back."  The judge and his judicial assistant received similar letters from Attorney Petersen.

¶28 On August 11, 2015, for his conduct in K.F.'s matter, Attorney Petersen was charged with one misdemeanor count of violating Wis. Stat. § 785.04(2)(a) – contempt of court.  On November 19, 2015, Attorney Petersen pled no contest to the charge and was convicted.  See State v. Petersen, Outagamie County circuit court case no. 2015CM878.

¶29 The OLR's complaint alleged the following counts of misconduct:

> **Count One**:  By failing to abide by K.F.'s decision as to the terms of a plea agreement he was willing to accept in resolution of the charges against him, and accepting a plea agreement that was not in accordance with K.F.'s decision, Attorney Petersen violated SCR 20:1.2(a).[1]
>
> **Count Two**:  By failing to truthfully inform K.F. about the terms of the State's plea agreement offer, Attorney Petersen violated SCR 20:1.4(b).[2]
>
> **Count Three**:  By misleading K.F. that the charge against him would be amended after his conviction, Attorney Petersen violated SCR 20:8.4(c).[3]

---

[1] SCR 20:1.2(a) provides: " . . . In a criminal case or any proceeding that could result in deprivation of liberty, the lawyer shall abide by the client's decision, after consultation with the lawyer, as to a plea to be entered."

[2] SCR 20:1.4(b) provides:  "A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."

**Count Four:**  By making numerous false statements in emails and oral conversations to R.F. over the course of five months, Attorney Petersen violated SCR 20:8.4(c).

**Count Five:**  By falsifying an email in order to mislead R.F. to believe that ADA Maier had acknowledged an agreement to amend K.F.'s conviction, Attorney Petersen violated SCR 20:8.4(c).

**Count Six:**  By fabricating the *Order To Amend Conviction and Sentence* designed to mislead R.F. and K.F. to believe that the court had amended K.F.'s conviction, Attorney Petersen violated SCR 20:8.4(c).

**Count Seven:**  By knowingly making a false statement of material fact to Judge Des Jardins in the November 3, 2014 letter in which he told Judge Des Jardins that he had provided R.F. with an unsigned copy of the *Order Amending Conviction and Sentence* and offering a false explanation that the appearance of the judge's signature on the Order may have resulted from a copy machine error, Attorney Petersen violated SCR 20:3.3(a)(1).[4]

**Count Eight:**  By engaging in conduct involving dishonesty, fraud, deceit or misrepresentation when he made false statements to the Appleton Police Department in the course of its investigation of the forged Order, Attorney Petersen violated SCR 20:8.4(c).

**Count Nine:**  By committing a criminal act that reflects adversely on his honesty, trustworthiness, and fitness as a lawyer during the course of his representation of K.F. that resulted in his conviction for Contempt of Court in violation of Wis. Stat.

---

[3] SCR 20:8.4(c) provides: "It is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

[4] SCR 20:3.3(a)(1) provides:  "A lawyer shall not knowingly make a false statement of fact or law to a tribunal or fail to correct false statement of material fact or law previously made to the tribunal by the lawyer."

§ 785.04(2)(a),     Attorney     Petersen     violated SCR 20:8.4(b).[5]

¶30  In the stipulation, Attorney Petersen stated that he fully understands the misconduct allegations; fully understands the ramifications should the court impose the stipulated level of discipline; understands that he has the right to consult with counsel; and states that his entry into the stipulation is made knowingly and voluntarily; and represents his admission of all misconduct recited in the complaint and his assent to the level and type of discipline sought by the OLR Director.

¶31  As previously noted, the parties agreed that an appropriate level of discipline for Attorney Petersen's misconduct is a one-year suspension of his license to practice law in Wisconsin.  The referee agreed.

¶32  The referee's May 8, 2017 report and recommendation found that the OLR met its burden of proof with respect to all nine counts of misconduct set forth above.  In discussing the appropriate level of discipline, the referee noted a number of aggravating factors.  The referee said Attorney Petersen did not engage in a single lie to his client but instead told multiple lies and fabricated documents to conceal those lies.  The referee also noted the nature of the misconduct and Attorney Petersen's attempt to shift the blame to R.F., his client's

---

[5] SCR 20:8.4(b) provides:  "It is professional misconduct for a lawyer to commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects."

father.    In addition, the referee pointed out that K.F. was incarcerated and had placed his trust in Attorney Petersen, who repeatedly told him that the felony charges would be amended. The referee also pointed out that Attorney Petersen was criminally charged and convicted of the misdemeanor offense of contempt of court.

¶33 With respect to mitigating factors, the referee pointed out that Attorney Petersen has no prior disciplinary record.  The referee noted that at the sentencing hearing in the misdemeanor case, Attorney Petersen's counsel indicated that Attorney Petersen had a difficult childhood as the child of alcoholic parents, with a resulting psychological or psychiatric factor at play.  While Attorney Petersen sought psychological treatment after the police became involved in the matter, the referee noted there is no proof in the disciplinary case that a medical condition was causal of the misconduct.

¶34 The referee said that a final mitigating factor to be considered is the imposition of other sanctions or penalties. Attorney Petersen was sentenced to one year of probation conditioned on 30 days in jail with Huber privileges, with 25 of those days stayed.  Attorney Petersen was also ordered to refund the $5,000 fee to R.F., and Attorney Petersen was required to provide a copy of the criminal complaint to every client he dealt with in the next year, along with a letter stating:

> I am a crook.  I am a cheat.  I am a thief.  I am a liar.  I was convicted of a crime on November 9[th], 2015.  My conviction resulted from my intentional choice to sell my own clients down the river and then

trying to cover it up.  You may not hire me or have me legally represent you in any fashion until you read the Criminal Complaint and Judgment of Conviction in my Outagamie County Wisconsin Case no. 15-CM878.  This disclosure is required as one of the conditions of my probation.

¶35 The referee discussed a number of prior disciplinary cases that support the imposition of a one-year suspension. Those cases include In re Disciplinary Proceedings Against Siderits, 2013 WI 2, 345 Wis. 2d 89, 824 N.W.2d 812; In re Disciplinary Proceedings Against Donovan, 211 Wis. 2d 451, 564 N.W.2d 772 (1997); and In re Disciplinary Proceedings Against Spangler, 2016 WI 61, 370 Wis. 2d 369, 881 N.W.2d 35.  Attorney Siderits was suspended for one year for five counts of misconduct, which included falsifying billable time records in order to qualify for bonus compensation.  Attorney Donovan received a six-month suspension.  While serving as an assistant district attorney, Attorney Donovan forged documents submitted in two cases in order to assist the defendants in those cases. She also pled no contest to two misdemeanor counts of forgery. Attorney Spangler received a six-month suspension for creating fake documents in two cases to mislead his clients into believing they had lawsuits pending when one lawsuit had been dismissed and the other had never been filed.

¶36 The referee said Attorney Petersen's conduct was potentially worse than that of Attorney Siderits because Attorney Petersen lied to multiple people and was convicted of illegal conduct directly related to his practice of law. However, the referee noted Attorney Petersen incurred the

13

additional penalty of having to notify prospective clients of his criminal conviction and having to provide them with a written statement designed to discourage clients from hiring him, effectively preventing him or at least severely curtailing him from practicing law.  The referee thus concluded that a one-year suspension was an appropriate level of discipline.  The referee also recommends that Attorney Petersen bear the full costs of the proceeding.

¶37 This court will adopt a referee findings of fact, unless they are clearly erroneous.  Conclusions of law are reviewed de novo.  See In re Disciplinary Proceedings Against Eisenberg, 2004 WI 14, ¶5, 269 Wis. 2d 43, 675 N.W.2d 747. The court may impose whatever sanction it sees fit, regardless of the referee's recommendation.  See In re Disciplinary Proceedings Against Widule, 2003 WI 34, ¶44, 261 Wis. 2d 45, 660 N.W.2d 686.

¶38 We adopt the referee's findings of fact and conclusions of law that Attorney Petersen violated the supreme court rules as alleged in the nine counts set forth above.  We also agree with the referee that a one-year suspension of Attorney Petersen's license to practice law in Wisconsin is an appropriate level of discipline for the misconduct.

¶39 Since no two cases are precisely identical, there is no standard sanction for any particular misconduct.  We agree with the referee that Attorney Petersen's misconduct is somewhat analogous to that in Siderits, where a one-year suspension was also imposed.  In addition, we also find that the misconduct is

14

somewhat similar to that at issue in our recent decision in Spangler.  Like Attorney Spangler, Attorney Petersen created a series of false documents to mislead his client about the status of his case.  Like Attorney Spangler, Attorney Petersen's deception and lies to K.F. and R.F. were a betrayal of the trust that the F.s had placed in him.  In addition, Attorney Petersen tried to blame R.F. for at least one of the forged documents.  Moreover, unlike Attorney Spangler, Attorney Petersen's conduct also resulted in a criminal conviction for contempt of court.  Accordingly, Attorney Petersen's conduct warrants a suspension in excess of the six-month suspension imposed in Spangler.  Thus, we agree with the referee that a one-year suspension of Attorney Petersen's license to practice law in Wisconsin is necessary to protect the public, the courts, and the legal system from Attorney Petersen's repetition of misconduct, to impress upon him the seriousness of his misconduct, and to deter other attorneys from engaging in similar misconduct.  We also deem it appropriate, as is our usual custom, to impose the full costs of this disciplinary proceeding on Attorney Petersen.  Since Attorney Petersen has made restitution to R.F., the OLR does not seek a restitution award and we do not impose such an award.

¶40  IT IS ORDERED that the license of Michael D. Petersen to practice law in Wisconsin is suspended for a period of one year, effective January 26, 2018.

¶41  IT IS FURTHER ORDERED that within 60 days of the date of this order, Michael D. Petersen shall pay to the Office of

Lawyer Regulation the costs of this proceeding which are $2,110.29 as of May 24, 2017.

¶42  IT IS FURTHER ORDERED that Michael D. Petersen shall comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been suspended.

¶43  IT IS FURTHER ORDERED that compliance with all conditions with this order is required for reinstatement.  See SCR 22.28(3).

¶44 ANN WALSH BRADLEY, J. *(dissenting).* Attorney Petersen's misconduct was egregious. He repeatedly lied to his client about the terms of the State's plea offer. He told his client that certain charges would be amended when Attorney Petersen knew this was untrue. He then falsified an email purportedly written by an Assistant District Attorney in furtherance of the lies and falsely reported that the judge agreed with the amended charges.

¶45 It gets worse. Attorney Petersen apparently forged a judge's signature on a fabricated court order, lied to the court and to the police, all the while continuing the lies to his client.

¶46 Given the nature and extent of Attorney Petersen's misconduct, I conclude that the one-year suspension imposed by the per curiam opinion is too light.

¶47 Accordingly, I respectfully dissent.

¶48 I am authorized to state that Justice SHIRLEY S. ABRAHAMSON joins this dissent.